15787, 15788. HERCULES POWDER COMPANY *v.* IWAI &
COMPANY LIMITED; and *vice versa.*

1. The court did not err in sustaining the special demurrers to the petition.
2. The court properly sustained the general demurrer as to the portion of the petition based upon contracts No. 1319 and No. 1345, and erred in overruling the general demurrer as to the portion based upon contracts No. 1346 and No. 1347.

DECIDED MAY 14, 1925. REHEARING DENIED JUNE 15, 1925.

Action for breach of contract; from Glynn superior court—
Judge Highsmith. May 22, 1924.

Certiorari was granted by the Supreme Court.

*Bennet, Twitty & Reese,* for Hercules Powder Company.

*Adams & Adams, Conyers & Wilcox,* contra.

BLOODWORTH, J. "Iwai & Company Ltd." (hereinafter referred to as "Iwai"), a Japan corporation, filed suit against Yaryan Rosin & Turpentine Company (hereinafter referred to as "Yaryan"), seeking recovery of $25,940 as damages arising out of the alleged breach of four contracts between the parties, all covering the purchase of rosin by Iwai from Yaryan.

At the time the contracts were made Yaryan was in bankruptcy, and was operated by receivers in bankruptcy, who made the contracts, and who cancelled them. Subsequently Yaryan paid its debts in full and the court restored its properties to its possession and control. Before this was done a stipulation was entered into in the bankruptcy cause, whereby Yaryan assumed whatever liability existed from the receivers to Iwai. The suit under review was filed against Yaryan after the termination of the bankruptcy proceedings, and the stipulation referred to was set out in plaintiff's petition.

After the suit was filed the Hercules Powder Company became the owner of the entire outstanding capital stock of Yaryan. Yaryan later conveyed all its properties and assets to Hercules, the latter assuming and agreeing to pay off all just and valid claims and demands against Yaryan. Yaryan then, by an applica-

tion to the superior court of Glynn county, sought to surrender its charter and be dissolved as a corporation. Before this application was acted upon a stipulation was entered into in the case under review, which was made the judgment of the court, by the terms of which the Hercules Powder Company was made defendant in the place of Yaryan. So the cause is now proceeding in the name of Hercules Powder Company as defendant, but for convenience the defendant will be hereinafter refered to as Yaryan.

. The four contracts declared upon are in writing. Iwai had an agency in New York City and Yaryan was in Brunswick, Georgia. These contracts were numbered 1319, 1345, 1346, and 1347, all were signed "Iwai and Company Ltd.," and each bore an undated acceptance signed "Yaryan Rosin and Turpentine Company," all were dated at New York,—first, May 7, 1919, and the others May 23, 1919. In form and substance these contracts were practically the same except in the statements following the headings "Shipment," "Price," "Terms," and "Freight booking."

Following the heading "Shipment," contracts No. 1319 and No. 1347 each had "May-June steamer from New Orleans," while contract No. 1345 had only the words "May-June," and No. 1346 had "June steamer from New Orleans." After the heading "Price" each contract fixed the price at so much per pound "gross for net, FAS steamer New Orleans." After the heading "Terms," in the first contract, came the words: "As usual. We have letter of credit for $11,000 so as to include ocean freight—above the approximate figure—and payment cash against ocean bill of lad.," and the three others each had: "Net cash against dock receipts and invoices. We have opened credit with Hong Kong and Shanghai Banking Corporation," and under the heading "Freight booking" the first contract said: ."To be advised you in a day or two;" and the others, "To be advised you separately."

There was also, in connection with each contract, a letter of credit. The two that supported contracts 1319 and 1345 expired June 30, 1919, and those supporting contracts 1346 and 1347 expired July 31, 1919. In the foregoing we have endeavored to make a statement of the contracts sufficiently full for the court to construe them as written. Attached to the petition as exhibits are a number of letters, but we think that the references to them in our opinion will be sufficient without setting them out here.

To the petition the defendant filed demurrers, both general and special. All the special demurrers were sustained. The general demurrers were sustained as to that portion of the petition based upon contracts No. 1319 and No. 1345, and overruled as to the portion of the petition based upon contracts No. 1346 and No. 1347. Each party excepted to the ruling against it.

1. The first headnote needs no elaboration.

2. As this court sees this case it presents for consideration two main propositions: (1) What is the proper construction of the four contracts on which suit was brought? (2) Were these contracts modified by the correspondence attached to the petition as exhibits?

As to the first of these, let us see what were the obligations of the parties under the contracts, in so far as questions relative thereto are raised in the case. Iwai's obligations were to secure letters of credit, provide the steamers to transport the rosin, pay for the rosin at so much "gross for net, FAS steamer New Orleans, and furnish 'freight bookings.'" Under the contract, when should the steamer be provided? Under none of the contracts was there any provision for "shipment" later than "June steamer from New Orleans." What does "June steamer from New Orleans" mean? That by these words Yaryan understood that delivery should be made in June is shown by the correspondence with the plaintiff, and especially by the following letters: On May 28 Yaryan wrote Iwai in reference to contract No. 1319 in part as follows: "This contract calls for May-June shipment and the letter of credit of your bank expires June 30, 1919. Furthermore, we have purchased a portion of this rosin from another party and specified May-June shipment, and he will require us to take delivery by June 30." On June 5, in reply to advice from Iwai that the "above rosin will be lifted last half of July," Yaryan wrote: "We can not carry rosin later than June." That Iwai understood that delivery was to be made in June is shown also by the correspondence, and especially by its letter of June 6, in which it wrote: "As it takes more than a week for a car to travel from your factory to the port, and over a week for the loading, we believe that shipping instructions should be furnished you between 1st of June and the 15th." Also by its letter of July 8, stating that a certain steamer probably would arrive about July 20, and adding: "If

you can oblige us by waiting until this steamer, will appreciate your courtesy;" and "All this trouble is due to steamship [company?] failing to bring ship to New Orleans, over which we have no control, and we sincerely hope that you will not hold us on this point." It will be noted that in this letter there is not the slightest suggestion that Yaryan had cancelled the contracts when it had no right to do so. In so far as contracts 1319 and 1345 are concerned, it is apparent that both Iwai and Yaryan understood that they would expire with June, as the supporting letters of credit each expired June 30. While these letters of credit would have been good at any time during their life, had their expiration date been months after the expiration of the contracts, and their expiration would not fix the date of the expiration of the contracts, they were no longer of any avail after their expiration; and this fact seems conclusive that when they were signed, both parties understood that the two contracts supported by them would end with the expiration of the letters of credit. As an abstract proposition, letters of credit supporting contracts would be available if they matured after the contracts, but could not be used after their expiration, even though it be during the life of the contracts. Under the other facts of the case, the fact that two of the letters of credit expired July 31 was immaterial. From the foregoing it appears that the contract provided that Iwai was to provide a steamer from New Orleans during June; and, as he did not do that, he failed in this part of his obligation.

Did Iwai furnish "freight bookings" as contemplated in the contract? Under the marginal heading "Freight booking" there was a promise to Yaryan, in the first contract, that it would be advised "in a day or two," and in the other contracts that it would be advised "separately." These promises have never been complied with. In its letter of June 6, Iwai, after saying, "We believe shipping instructions should be furnished you some time between the 1st of June and the 15th," continued: "We took this matter up with Caldwell & Company, New York shipping agents of O. S. K., and they assured us that they would communicate direct with J. H. W. Steele Company and ask them to issue accurate information as to shipment to be made against our above contracts." Caldwell & Company wrote to Yaryan on June 6 regard-

ing shipment of rosin under contracts 1345, 1346, and 1347, in part as follows: "We wish to advise that we have requested the J. H. W. Steele Company, of New Orleans, to advise you when to forward this material to New Orleans, as sailing of steamer is still indefinite. *When you receive this advice* please forward this material," etc. (Italics ours.) The J. H. W. Steele Company did not write to Yaryan until July 7, after the contracts had been cancelled. Yaryan had on June 5 positively told Iwai that it could not carry the rosin longer than June, and made Iwai two propositions, neither of which was accepted, but Iwai contented itself with the suggestion that it had taken the matter up with Caldwell & Company and they had assured it that they would communicate with J. H. W. Steele Company, and "ask them to issue accurate information as to shipment to be made against our above contracts." During the life of the contracts this "accurate information" was never furnished Yaryan. "Freight booking" is "making specific arrangements for the transportation of goods by a particular vessel in advance of its sailing day." *Ocean Steamship Co.* v. *Savannah Locomotive Works,* 131 *Ga.* 831 (5) (63 S. E. 577, 20 L. R. A. (N. S.) 265, 15 Ann. Cas. 1044). From the foregoing it appears that Iwai breached its contract, not only by failing to provide a vessel for the transportation of the rosin, but also by failing to furnish "freight bookings." In the correspondence attached to the petition as exhibits there is nothing that would change or modify the contract. Moreover, each contract provides that "No additions or amendments to this contract shall be binding until the same be endorsed in writing upon the back hereof and signed by the parties." There was no such endorsement upon either of the contracts.

Under our view of the contract the court properly sustained the general demurrer attacking that portion of the petition based upon contracts No. 1319 and No. 1345, and erred in overruling the general demurrer attacking that portion of the petition based upon contracts No. 1346 and No. 1347.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. Broyles, C. J., and Luke, J., concur.*